OPINION
{¶ 1} Defendant-appellant Arthur Eugene Lynn appeals from the judgment entered in the Mahoning County Common Pleas Court after he pled guilty to voluntary manslaughter. The issues presented concern whether appellant understood the maximum penalty he was facing at the time of the plea and whether the court properly imposed the maximum sentence. For the following reasons, appellant's plea, conviction, and sentence are affirmed.
 STATEMENT OF FACTS {¶ 2} On July 6, 1999, a man informed police that appellant asked him to help move a dead body into a garage on Russell Street in Youngstown, Ohio. The body was that of Keith Rose, a relation of appellant. Appellant claimed that he was asleep in a chair when the victim starting hitting him in the face and saying that he was going to kill his mother, his father, and appellant. Appellant grabbed his gun from under the chair and shot the victim in the chest and along the side of his head. The victim retreated and walked outside. Appellant followed the victim and shot him in the back of the head.
 {¶ 3} Appellant was indicted for murder in violation of R.C.2903.02(A), which entails purposely causing the death of another, and a firearm specification. On April 6, 2000, a plea agreement was reached whereby appellant pled guilty to a reduced charge of voluntary manslaughter with a firearm specification. The sentencing hearing was held on June 2, 2000. The court agreed with the state's recommendation of a maximum sentence. Appellant was thus sentenced to ten years for voluntary manslaughter and three years for the firearm specification. Timely notice of appeal was filed. After various changes of counsel due to their withdrawals, the case was finally fully briefed in March 2002.
 ASSIGNMENT OF ERROR NUMBER ONE {¶ 4} Appellant's first assignment of error alleges:
 {¶ 5} "DEFENDANT-APPELLANT'S GUILTY PLEA WAS NOT `KNOWINGLY [sic] AND VOLUNTARY' AS REQUIRED BY CRIMINAL RULE 11(C)(2)(a) BECAUSE BOTH THE JUDGE AND TRIAL COUNSEL DID NOT UNDERSTAND THE EFFECT OF THE SENTENCE."
 {¶ 6} Pursuant to Crim.R. 11(C)(2)(a), the court shall not accept a guilty plea in a felony case without first addressing the defendant personally and determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges, the maximum penalty involved, and that he is not eligible for probation if that is so. Although part of the text of the assignment above contends that the court and counsel did not understand the effect of the sentence, the argument presented under the assignment contends that appellant did not understand the maximum sentence or, more accurately, believed that he would not be sentenced to the maximum. Contrary to the language in the text of the assignment, it is obvious that both the court and defense counsel knew that the maximum sentence was ten years and that three years were mandatory for the gun specification.
 {¶ 7} As for appellant's contention that he was confused as to the maximum sentence, this argument is wholly without merit. Albeit not a deciding factor, we note that the written plea agreement, which appellant said he read and understood, clearly stated all potential sentences, including the maximum sentences. Additionally, in reviewing the plea transcript, we see that the state initially noted that it would recommend that maximum sentence of ten years plus three years for the specification. (Tr. 3). The court inquired as to whether appellant heard the prosecutor, and appellant answered in the affirmative. (Tr. 4). Most importantly for the purposes of the rule, the court specifically addressed appellant when it stated:
 {¶ 8} "Now, upon acceptance of your plea, I could proceed today with judgment and sentence, and you could be sentenced to a term of anywhere from three years all the way up to ten years on the charge of voluntary manslaughter. In addition to that, and consecutively to whatever it is that I would impose as the sentence, you would have to serve three years of actual incarceration on the firearm spec.
 {¶ 9} "Three years of actual incarceration means you have to do three years. Nobody can get you out of it in any way whatsoever, and the law would require me to impose that sentence, and then order you to serve whatever other sentence I give you consecutively.
 {¶ 10} "So you could have as little as three years, plus three years. Six years. Three years on the charge, three years on the firearm spec. Six years. Or three years on the firearm spec, plus ten years on the voluntary manslaughter.
 {¶ 11} "THE DEFENDANT: Yes, sir, I understand.
 {¶ 12} "THE COURT: Maximum is 13 years.
 {¶ 13} "THE DEFENDANT: I understand." (Tr. 10-11).
 {¶ 14} The court then advised him of the maximum fine of $20,000 plus costs with the indigency exception. (Tr. 11-12). The court advised appellant that he was not eligible for probation and that he would be sentenced to the penitentiary. The court noted a discussion by defense counsel about how appellant cannot ever receive shock probation if the court sentences him to more than five years on the voluntary manslaughter. (Tr. 12-13). Appellant indicated he understood that if the court sentenced him to six years or more, then he would have to serve the entire time. (Tr. 13). It should be noted here that appellant has a college degree in secondary education from Youngstown State University and a master's degree in geology from the University of Toledo.
 {¶ 15} Appellant basically argues that the court confused him, not as to what the maximum sentence is, but rather as to what the court intended to sentence him. However, it is clear from the colloquy that appellant understood the point the court was making. (Tr. 14). Appellant even asked intelligent questions as to any effect of a future change in the shock probation law.
 {¶ 16} Moreover, a defendant almost never knows at a plea hearing what sentence a court is going to impose later. This comes at sentencing, and in this case, a presentence investigation was requested by appellant; hence, the sentencing hearing was held two months later. Appellant claims that he thought that the maximum sentence talk was all just a formality. Well, it is exactly that, but it is also a possibility.
 {¶ 17} The court gave no indication and made no implication of what appellant's sentence would be on the voluntary manslaughter conviction; it stated anywhere from three to ten years. (Tr. 10). The court continued this uncertainty of sentence line of thought by using words such as, "whatever it is that I would impose" and "if I give you * * * ten years." (Tr. 11-12). In case all this was not enough, the court later reiterated, "if I give you ten years on this charge, this doesn't apply to the firearm spec." (Tr. 15). Finally, appellant answered affirmatively when asked if he understood that the sentence is in the court's hands with regards to punishment and that it is up to the court what sentence will be imposed. (Tr. 20). The court again repeated that it must decide what the appropriate penalty should be after the presentence report is prepared and at the sentencing hearing. (Tr. 21).
 {¶ 18} Accordingly, the trial court more than fully complied with Crim.R. 11(C)(2)(a); appellant understood the maximum penalty and the fact that the court could impose any available sentence that it saw fit. This assignment of error is without merit.
 ASSIGNMENT OF ERROR NUMBER TWO {¶ 19} Appellant's second assignment of error provides:
 {¶ 20} "DEFENDANT-APPELLANT REQUESTS THAT THIS COURT REDUCE OR OTHERWISE MODIFY HIS SENTENCE, OR IN THE ALTERNATIVE, REMAND THE MATTER TO THE TRIAL COURT FOR RE-SENTENCING PURSUANT TO SECTION 2953.08 OF THE OHIO REVISED CODE."
 {¶ 21} Appellant's main complaint is that the court failed to set forth reasons in support of a maximum sentence. But first, appellant seems to argue that the court erred in deviating from the minimum sentence because it failed to set forth reasons in support of its specific alternative findings that a minimum sentence would demean the seriousness of the offense and would not adequately protect the public. See R.C. 2929.14(B) (sentencing court must find that either a minimum sentence would demean the seriousness of the offense or a minimum sentence would not adequately protect the public). However, such finding must be made only when a court deviates from the minimum; reasons are not required as they are when a court imposes a maximum sentence. State v.Edmonson (1999), 86 Ohio St.3d 324, 326.
 {¶ 22} We shall now proceed to address the maximum sentence issue. A court may only impose a maximum sentence on an offender who committed the worst form of the offense, poses the greatest likelihood of committing future crimes, committed a major drug offense, or is a repeat violent offender. R.C. 2929.14(C). If the court determines that at least one of these circumstances exist, the court must make such a finding and state its reasons for the maximum sentence. R.C. 2929.19(B)(2)(d);Edmonson, 86 Ohio St.3d at 328-329.
 {¶ 23} Here, the trial court's judgment entry stated that appellant committed the worst form of the offense but gives no reasons. Thus, appellant believes that the trial court failed to state sufficient reasons in the record for its findings. However, the record includes both the judgment entry and the sentencing transcript. State v. Rogers, 7th Dist. No. 01CO5, 2002-Ohio-1150, ¶ 16 (citing cases from various districts around the state). In the Supreme Court's leading case on maximum sentences, it evaluated both the judgment entry and the sentencing transcript when determining whether the court made the requisite findings on the record. Edmonson, 86 Ohio St.3d at 326-328. We do note that the issue of what constitutes findings or reasons "on the record" is currently pending in the Supreme Court after a conflict was certified between State v. Comer (Jan 25, 2002), 6th Dist. No. L-9901296 and State v. Williams (2000), 136 Ohio App.3d 570, 572-73 (the third district case that we have specifically rejected). We shall proceed our analysis in accordance with our past precedent. See, e.g., Rogers,
supra; State v. Williams (Dec. 19, 2001), 7th Dist. No. 00CA206, 2001-Ohio-3488; State v. Palmer (Nov. 19, 2001), 7th Dist. No. 99CA6.
 {¶ 24} At the sentencing hearing, the court gave multiple reasons supporting a determination that appellant committed the worst form of the offense. The court expressed disbelief that appellant shot the victim three times. (Tr. 10). The court noted that appellant was charged with murder and that it was not inclined to give him a break in sentencing when he already received a break from the prosecutor in charge reduction. (Tr. 15). The court explained that appellant could have received life in prison for murder. (Tr. 12, 15). The court opined that after the perceived attack was thwarted, appellant committed cold-blooded murder by following the victim and shooting him in the back of the head. (Tr. 12). The court stated that appellant chose the wrong weapon to ward off an attack of punches thrown by an acquaintance who was smaller than appellant. (Tr. 13). The court noted that appellant expressed remorse now but did not do so when he was dragging the body into the garage to cover up the crime. (Tr. 15). These reasons expressed by the court at the sentencing hearing, sufficiently placed in the record the reasons for finding that appellant committed the worst form of voluntary manslaughter. As such, this assignment of error is overruled.
 {¶ 25} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Donofrio, J., concurs.
Waite, J., concurs.